F I L E D
Clerk
District Court

FEB 15 2012

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

DONALD G. FLORES,

      Plaintiff,

v.

FIRST HAWAIIAN BANK and UNION
BANK OF CALIFORNIA,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:11-CV-00022

**MEMORANDUM OPINION AND
ORDER GRANTING FIRST HAWAIIAN
BANK'S MOTION TO DISMISS AND
GRANTING IN PART AND DENYING IN
PART UNION BANK OF CALIFORNIA'S
MOTION TO DISMISS**

Before the Court is a Motion to Dismiss Complaint filed by Defendant First Hawaiian

Bank ("FHB") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

("Motion," Dkt. No. 4.)  Defendant Union Bank of California ("UBC") has joined in the Motion.

("Joinder," Dkt. No. 6.)  Plaintiff Donald G. Flores ("Flores") opposes the Motion.

("Opposition," Dkt. No. 17.)  Defendants have filed replies.  ("FHB Reply," Dkt. No. 19; "UBC

Reply," Dkt. No. 21.)  Upon consideration of the papers and the arguments made by counsel at a

hearing on December 22, 2011, the Court now rules.  For the reasons set forth herein, the Court

dismisses all five of Plaintiff Flores's causes of action against Defendant FHB.  As to Defendant

UBC, the Court dismisses the claims of unjust enrichment, gross negligence, breach of fiduciary

1    duty, and fraud.  Flores may proceed against UBC on the claims of breach of contract and

2    negligence.

3

4    **I.     Background**

5        The Complaint (Dkt. No. 1) and attached documents[1] make the following factual

6    allegations: On September 10, 1993, Flores purchased a time certificate of deposit ("TCD") from
7
     UBC's Saipan branch in the amount of $200,000. (Compl. ¶ 5.)  The non-negotiable, non-
8
9    transferable TCD matured in 32 days and earned 2.5 percent interest payable at maturity.  (Ex.

10   A.)  On the front of the TCD is printed a disclaimer: "This certificate earns no interest after

11   maturity."  (*Id.*)  Flores "understood that the TCD would continue to be renewed by [UBC]
12
     automatically . . ." (Compl. ¶ 13.)  Flores planned for the TCD to be a long-term investment.
13
14   (*Id.*)

15       Eight years later, UBC sold all the assets and liabilities of its Saipan branch office to

16   FHB and closed the office. (*Id.* ¶ 14; Ex. E; Ex. G.)  At about that time, UBC and FHB were

17   "heavily involved in the shredding of bank documents." (*Id.* ¶ 15.)  In 2008, Flores's counsel
18
     wrote three letters to UBC offices in San Diego, California.  (*Id.* ¶ 17.)  In the first letter dated
19
20   January 10 and addressed to UBC Corporate Headquarters, counsel wrote that Flores wanted to

21   withdraw the principal and all accumulated interest, and asserted that the TCD had been self-

22

23   ───────────────────────────

24   [1] Flores attached 11 documents: a time certificate of deposit (Ex. A); two letters from attorney Jose S. Dela Cruz
     ("Dela Cruz") on behalf of Flores to UBC Corporate Headquarters ("UBC HQ"), San Diego, CA, the first dated
25   January 10, 2008 (Ex. B), the second dated June 10, 2008 (Ex. C); a letter from Dela Cruz on behalf of Flores to
     Lisa Mednick, Manager, UBC San Diego Main Branch, dated September 1, 2008 (Ex. D); a letter to Dela Cruz and
26   Flores from Cheryl Robbins, UBC Office of the President/Customer Care, dated September 22, 2008 (Ex. E); a letter
     to Jesus C. Borja, Esq., from Rene M. Chinen ("Chinen"), FHB Vice President, Legal Department, Honolulu, HI,
27   dated August 29, 2009 (Ex. F); a letter from attorney Juan T. Lizama ("J.T. Lizama") on behalf of Flores to Juan Sn.
     Lizama, FHB Oleai Branch, Saipan, MP, dated July 13, 2011 (Ex. G); a USPS Domestic Return Receipt showing a
28   delivery on July 21, 2011, to UBC HQ (Ex. H); a letter from Chinen to J.T. Lizama dated July 25, 2011 (Ex. I); a
     letter from J.T. Lizama on behalf of Flores to UBC HQ, undated (Ex. J); and a USPS Domestic Return Receipt
     showing a delivery on August 12 [year illegible] to UBC HQ (Ex. K).

renewing at the prevailing rate of interest since the stated maturity date in 1993. (Ex. B.)  In this unsigned letter, counsel referenced the enclosure of a photocopy of the TCD and the bearer identification page on Flores's passport, as well as Mr. Flores's possession of the original Certificate of Deposit.  (*Id.*)  On June 10, counsel wrote a second letter and sent it to UBC Corporate Headquarters.[2]  (Ex. C.)  On September 1, counsel sent a third letter, this time to the manager of UBC's San Diego main office.  (Ex. D.)  He enclosed a copy of the June 10 letter and asserted, "This is the letter that has remained unanswered."[3]  (*Id.*)  In addition to renewing the demand for payment, Flores's counsel explained that because of the thousands of miles between Saipan and California, it was impractical for him to "personally stop[] by Union Bank to withdraw his deposit." (*Id.*)

On September 22, 2008, UBC responded.  (Ex. E.)  A representative from the Office of the President/Customer Care wrote that "because the CD closed over 10 years ago, [UBC] no longer holds records from this time frame."  (*Id.*)  UBC advised Flores to file a claim with the State of California and suggested that the TCD may have escheated.  (*Id.*)  There is no further correspondence between Flores and UBC.  (Compl. ¶ 19.)

On an unknown date, Flores sent a letter to FHB to inquire into any records the bank might have on the TCD.[4]  (Compl. ¶ 20.)  On August 25, 2009, a vice president of FHB in Honolulu, Rene M. Chinen ("Chinen"), sent a response.  (*Id.*)  Chinen admitted that FHB

---

[2] For the most part, the June 10 letter repeats the January 10 letter verbatim.  The one substantive difference is that counsel in the January 10 letter asserts directly that the TCD is automatically self-renewing, whereas the June 10 letter states, more tentatively, "[W]e believe that the deposit has continued to accumulate interest . . ." (Ex. C.)  The January 10 letter is unsigned.

[3] UBC acknowledged receipt of the June 10 and September 1 letters only.  (Ex. E.)  On a motion to dismiss, all disputes and ambiguities must be resolved in favor of the plaintiff.  *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 950 (9th Cir. 2003).  Hence, the Court declines to draw the natural inference from Exhibits B, C, and D that the January 10 letter may not have been sent.  Plaintiff has asserted that it was sent.  For purposes of this motion, the Court deems it was sent.

[4] Flores did not attach this letter to the Complaint.

"purchased certain accounts" from UBC in November 2001.  (Ex. F.)  Chinen stated that none of

the bank's records of the 2001 purchase indicated that the TCD was transferred to FHB.  (*Id.*)  In

a "conversion cross reference file," FHB located a checking account for Flores that was part of

the purchase, but did not find a TCD.  (*Id.*)  The "trial balance report" from November 9, 2001,

UBC's last day of business, contained no record of the TCD.  (*Id.*)  Chinen offered to share the

trial balance report with UBC and invited Flores to "share a copy of this letter with [UBC] if that

assists Mr. Flores in pursuing this matter."  (*Id.*)

On July 13, 2011, new counsel for Flores sent a letter to FHB's Oleai branch on Saipan

requesting that FHB say what happened to Flores's money, what amount it believes is owed to

Flores, and when it is prepared to make payment.  (Ex. G.)  The letter threatened a lawsuit

against FHB if a satisfactory explanation was not received within 15 days.  (Ex. G.)  The Oleai

branch forwarded the letter to Chinen in Honolulu.  On July 25, Chinen responded.  (Ex. H.)

Chinen referred Flores to the "detailed explanation" provided to him in 2009 and reiterated

FHB's assertion that it "never purchased the account in question, and should not be a party to

Mr. Flores's continuing attempts to resolve this issue with [UBC]."  (*Id.*)  Flores sent UBC

copies of the July 13 and July 25 letters.  (Ex. J.)

On September 22, 2011, Flores filed suit against FHB and UBC in the Superior Court of

the Commonwealth of the Northern Mariana Islands ("CNMI").  (Dkt. No. 1, attachment.)

Flores alleged five causes of action:  (1) breach of contract, (2) unjust enrichment, (3) negligence

or gross negligence, (4) breach of fiduciary duty, and (5) fraud, and demanded compensatory and

punitive damages.  (*Id.*)

On October 21, 2011, FHB filed a notice of removal of the action to federal court.  (Dkt.

No. 1.)  UBC joined in the notice of removal.  (Dkt. No. 8.)

1

2      **II.    Jurisdiction**

3          This is a diversity action over which the Court must have subject matter jurisdiction

4      pursuant to 28 U.S.C. § 1332.  The parties are diverse: Flores is a resident of the CNMI, FHB's

5
       principal place of business is Hawaii, and UBC's principal place of business is California.  The
6
7      amount in controversy, $200,000, exceeds the jurisdictional threshold of $75,000.  Based on the

8      foregoing facts, the Court has subject matter jurisdiction over this action.   On November 25,

9      2011, Flores filed a "Memorandum of Law in Opposition to Defendant First Hawaiian Bank's
10
       Motion [*sic*] for Removal and Motion to Dismiss." ("Opposition," Dkt. No. 17.)  A party does
11
12     not *move* for removal; it *notices* removal, as FHB did.  Removal of a civil action is effective

13     upon the filing and service of required notice.  28 U.S.C. § 1446(d).  While a court may remand

14     at any time if it determines it lacks subject matter jurisdiction, a motion to remand on the basis of

15     any other defect must be made within 30 days of the filing of notice of removal in the district
16
       court.  28 U.S.C. § 1447(c).  Flores has not moved to remand.  Even if the Court were to construe
17
18     the Opposition as a motion to remand, the motion would be untimely, as it was made more than

19     30 days after the filing of notice of removal on October 21.   Moreover, Flores does not allege a

20     procedural defect, such as late filing of notice or improper service, but asks the Court to remand

21     solely "on the ground of conserving judicial resources." (Opp. at 1.)  *Cf. Fristoe v. Reynolds*
22
       *Metals Co.*, 615 F.2d 1209, 1212–1213 (9th Cir. 1980) (defect of late filing of removal notice).
23
24     Because no nonjurisdictional defect has been raised in a timely manner, the case is properly

25     removed to this Court pursuant 28 U.S.C. §§ 1441 and 1446.

26     //

27     /

28

### III.     Applicable Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to raise the defense that the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading that states a claim for relief must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may make multiple claims "alternatively or hypothetically," and a pleading is sufficient if any of the alternative statements is sufficient. Fed. R. Civ. P. 8(d)(2).  Inconsistent claims are permissible. Fed. R. Civ. P. 8(d)(3); *see Hillis v. Heineman,* 626 F.3d 1014, 1018 (9th Cir. 2010) ("parties may argue alternative positions without waiver").

On a motion to dismiss, all well-pleaded factual allegations as taken as true. *Hebbe v. Pliler,* 627 F.3d 338, 341–42 (9th Cir. 2010). The court should "consider all inferences favoring the non-moving party that a trier of fact could reasonably draw from the evidence," but should "not accept any unreasonable inferences . . ." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). Documents appended to the complaint are properly part of the court's review of the sufficiency of plaintiff's claims. *See Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 429–30 (9th Cir. 1974); Fed. R. Civ. P. 10(c).

Although a complaint does not need "detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). Although the court "must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937, 1950 (2009) (citation and internal quotation marks

omitted).  To survive a 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)).

*Iqbal* sets forth a two-step process for determining whether a motion to dismiss should be granted.  The first step is to "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.  After discarding those unsupported legal conclusions, the second step is to take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Still, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In short, "a complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Hebbe*, 627 F.3d at 341–42 (quoting *Iqbal*, 129 S. Ct. at 1949).  Underlying this rule are two basic principles:

1

2

3

4

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

5

6

*Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011)

7

8

9

10

11

12

13

14

15

16

17

18

19

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how of the misconduct charged.'"  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)).  A plaintiff must "set forth more than the neutral facts necessary to identify the transaction" and explain "what is false or misleading about a statement, and why it is false."  *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Sec. Litig.),* 42 F.3d 1541, 1548 (9th Cir. 1994).  Claims of fraud or mistake "must, in addition to pleading with particularity, also plead plausible allegations. That is, the pleading must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"  *Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly,* 550 U.S. at 556).

20

21

22

23

24

25

26

27

28

A court exercising diversity jurisdiction applies state substantive law.  *Nevada Power Co. v. Monsanto Co.,* 955 F.2d 1304, 1306 (9th Cir. 1992).  In the CNMI, the rules of the common law, as expressed in the Restatements, are rules of decision, "[a]bsent an indication that the legislature intends a statute to supplant common law."  *Chun Yan Dong v. Royal Crown Ins. Corp.,* 2010 U.S. Dist. LEXIS 111917 (D. N. Mar. I. Oct. 18, 2010) (quoting *C.N.M.I. v. Hasinto,* 1 N. Mar. I. 377, 383 (1990)); see also 7 C.M.C. § 3401.  In regard to transactions involving a branch or separate office of a bank, the "law of the place where the branch or

separate office is located" governs the bank's liability "for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection[.]"  4 C.M.C. § 4102(2).

## IV.   Analysis

### A.  Breach of Contract

Flores claims that UBC and FHB breached a contract when they refused to pay him principal and interest upon presentment of the TCD. (Compl. ¶ 24.) "Breach of a contract occurs upon the nonperformance of a contractual duty of immediate performance." *Manglona v. Commonwealth,* 2005 MP 15 ¶ 15. Flores's TCD evidences an "implied contract of deposit" between Flores as creditor and UBC as debtor. *Brown v. New York Life Ins. Co.,* 152 F.2d 246, 249 (9th Cir. 1945); *see also Ames v. Great Southern Bank,* 672 S.W.2d 447, 449 (Tex. 1984) ("The provisions of a certificate of deposit form a contract which creates the relationship of debtor and creditor between the bank and its depositor."); *Capitaliza-T Sociedad de Responsabilidad Limitada de Capital Variable v. Wachovia Bank of Del. Nat'l Ass'n,* 2011 U.S. Dist. LEXIS 24472 (D. Del. Mar. 9, 2011) ("Absent evidence otherwise, and especially for an interest-bearing account, it is presumed that depositing money into a bank account creates a contractual debt obligation."). Flores alleges that he deposited $200,000 with UBC in 1993, and that when he presented the TCD in 2008, UBC dishonored it. (Compl. ¶¶ 23–24.) These clear and precise factual allegations are sufficient to make out a claim that UBC breached the contract.

As to FHB, the sufficiency of the breach-of-contract claim turns on whether Flores has plausibly alleged facts to support a reasonable inference that FHB succeeded to UBC's

1    obligations on the TCD. The sole allegation in support of this inference is that in 2001, FHB

2    bought the assets of UBC's Saipan branch.

3        Before analyzing this question, it is necessary to establish the extent to which statements

4    contained in the documents attached to the Complaint have been adopted by Flores as part of the

5    pleading. FHB asserts that Flores has already, in effect, conceded that FHB did not acquire his

6    TCD. In two letters to Flores, FHB denied that it purchased the Flores TCD from UBC. (Ex. F;

7    Ex. I.) FHB argues that by "incorporat[ing]" the letters into the Complaint, Flores has adopted

8    FHB's denial and thereby negated his claim that FHB succeeded UBC. (Memorandum in

9    Support of Defendant [FHB]'s Motion to Dismiss Complaint, hereafter "FHB Memo.," 5.)

10       Where a plaintiff "attaches documents and relies on their contents to form the basis of a

11   claim, dismissal is appropriate if the document negates the claim." *Saunders v. Knight,* 2006

12   WL 224426, 2006 U.S. Dist. LEXIS 6007 (E.D. Cal.); *see In re Wade,* 969 F.2d 241, 249 (7th

13   Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint

14

15   that indicate that he or she is not entitled to judgment."). The *Saunders* court cited to a Seventh

16   Circuit case, *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir. 2002). In

17

18   *Thompson*, a public official claimed that he was transferred to a new position in retaliation for

19   exercising his free-speech rights. *Thompson*, 300 F.3d at 753. He attached to the complaint a

20   formal job description to show that the transfer from his former position of responsibility was a

21

22   demotion. *Id.* at 754. On the basis of that description, the court found that the plaintiff had been

23

24   in a policymaking position and therefore could not maintain a First Amendment claim. *Id.* at

25   758–59. "Thompson cannot attach a description of [his former] duties . . . , affirming that those

26   were his duties, and later, after realizing the consequences, attempt to retract the exhibit." *Id.* at

27

28   754. The court observed that the complaint itself "did not provide a single direct reference" to

Thompson's former duties. *Id.* "That leaves us with the exhibit as the sole uncontradicted description [of those duties]." Id. at 755.

The Flores Complaint, unlike the complaint in *Thompson*, directly contradicts the defendant's version of the facts. It is absurd to maintain that Flores accepts as true FHB's conclusion that it never acquired his TCD when he is alleging that FHB and UBC are colluding in fraud in order to steal his money. Therefore, the letters does not negate the claim outright.[5]

Still, the letters powerfully undermine the plausibility of Flores's breach-of-contract claim against FHB. Flores accepts that FHB has denied it acquired the TCD (Compl. ¶ 21), and the letters support that fact. In the letters, FHB said that it searched its records of the 2001 transaction to purchase assets from UBC. It identified two such records: a "trial balance report" and a "conversion cross reference file." (Ex. F.) It acknowledged that a checking account belonging to Flores appears in the latter record. (*Id.*) It offered to share the trial balance report with UBC to assist Flores in his search. (*Id.;* Ex. I.)

By appending the letters to the Complaint, Flores put before the Court the reasons FHB believes it did not acquire his TCD. Indeed, in the Complaint proper, even when pleading a cause of action in fraud, Flores never alleges that FHB is lying about the TCD's absence from existing records. The closest he comes is to allege that the two banks "knowingly and intentionally failed to include any record of Plaintiff's CD account in the [2001 purchase of

---

[5] The *Saunders* court reached a similar conclusion on similar facts. Saunders brought a § 1983 action against Fresno County (California) law enforcement officers after criminal charges against her were dismissed for lack of probable cause. *Saunders*, 2006 U.S. Dist. LEXIS 6007 at *2–4. She attached to her complaint defendant Knight's Statement of Probable Cause. *Id.* at *9. On defendants' motion to dismiss based on qualified immunity, the court declined to infer from Knight's statement a set of facts contrary to those alleged by Saunders in the body of the complaint. Id. at *12–13. Distinguishing the instant case from *Thompson*, the court noted that "Plaintiff has not relied on the passages she attached to the [complaint] as a necessary part of her claims." *Id.* at *11.

assets] in order to avoid payment of the principal and interest due to Plaintiff."  (Compl. ¶ 39.)
The allegation, with nothing more to support it than the fact that FHB will not honor a TCD
issued by a different bank, is implausible.  Standing alone, the fact that FHB acquired UBC's
Saipan assets in 2001 may permit a reasonable inference that it acquired the unredeemed Flores
TCD.  But in the light of FHB's letters to Flores, the inference is not reasonable.  Flores is really
asserting that despite evidence to the contrary, FHB *must* have acquired his TCD, and that if
FHB has not been able to locate a record, it *must* be because of fraud or at least gross negligence.
These forced inferences are not supported by the facts pled.  They are not sufficiently plausible
to subject FHB to discovery.  For these reasons, Flores has failed to state a claim for breach of
contract against FHB.


### B.  Unjust Enrichment

Flores claims that FHB and UBC have been unjustly enriched in the amount of the
$200,000 principal plus accumulated interest on the TCD since the deposit was made in 1993.  A
finding of unjust enrichment requires "that the allegedly enriched individual receive a benefit."
*Olaitiman v. Emran,* 2011 MP 8 ¶ 15 (citing RESTATEMENT OF RESTITUTION § 1 cmt. a (1937)).
The principal of unjust enrichment is the basis for the equitable remedy of restitution.  *See
Commonwealth Dev. Auth. v. Guerrero Bros.,* 2007 MP 32 ¶ 21 (citing RESTATEMENT (THIRD)
OF SURETYSHIP & GUARANTY § 26 cmt. d).  Generally, however, "no action for unjust
enrichment lies where a contract governs the parties' relationship to each other."  *McKesson
HBOC, Inc. v. New York State Common Ret. Fund,* Inc., 339 F.3d 1087, 1091 (9th Cir. 2003)
(applying Delaware law); *accord Paracor Fin., Inc. v. GE Capital Corp.,* 96 F.3d 1151, 1167
(9th Cir. 1996) (applying California and New York law); *Varner v. Peterson Farms,* 371 F.3d

1    1011, 1018 (8th Cir. 2004) (applying Arkansas law).  Specifically, restitution by rescission "as a

2    remedy for a material breach of contract is not available against a defendant whose defaulted

3    obligation is exclusively an obligation to pay money."  RESTATEMENT OF RESTITUTION § 37(2).

4    While the CNMI courts have not addressed this issue directly, "it seems likely . . . that the

5
     Commonwealth would adopt the well-settled rule that a quasi-contractual claim for 'restitution'
6

7    or 'unjust enrichment' will not lie where there exists a valid express contract between the parties

8    covering the same subject matter." *Sin Ho Nam v. Quichocho*, 2011 U.S. Dist. LEXIS 98468 (D.

9    N. Mar. I. Sept. 1, 2011), *64.

10
         As previously explained, the relationship between Flores and UBC is contractual.  If
11

12   UBC is in breach, it is because the bank has defaulted on its obligation to pay Flores money.  If

13   Flores prevails in his breach-of-contract claim, he can be made whole by the usual contract

14   remedy of expectation interest.  Therefore, the claim of unjust enrichment cannot be sustained

15   against UBC.  Furthermore, the claim against FHB fails both for this same reason and because

16   Flores has not pled sufficient facts to show that FHB received a benefit.

17

18

19              *C.  Negligence or Gross Negligence*

20        Flores alleges alternative theories of negligent or grossly negligent conduct by UBC and

21   FHB that has resulted in the loss of any record of his TCD.  The first theory, maintained against

22   UBC only, is that UBC "failed to duly establish and record [the TCD] in [its] ledger or other
23

24   account records . . ." (Compl. ¶ 30.)  The second theory, involving both banks, is that UBC and

25   FHB "failed to ensure that [the TCD] was included" in FHB's purchase of assets from UBC in

26   2001.  (*Id.* ¶ 31.)

27

28

Negligence is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." RESTATEMENT (SECOND) OF TORTS §282 (1965). "The determination that a duty of care exists is an essential precondition to attaching liability for negligence." *Furuoka v. Dai-Ichi Hotel,* 2002 MP 5 at ¶ 32.

Under the Uniform Commercial Code, as adopted by the CNMI, banks have a responsibility "to exercise ordinary care in handling an item . . ." 5 C.M.C. § 4103(5). A bank owes a basic duty "to act with reasonable care in its transactions with its customers[.]" *Rodriguez v. Bank of the West,* 162 Cal. App. 4th 454, 460 (Cal. App. 2d Dist. 2008). A customer is "any person having an account with a bank . . ." 5 C.M.C. § 4104(e).

Flores has presented sufficient evidence to show that he purchased a TCD from UBC in 1993. He claims to still have the original TCD, and that he has never been paid the money he deposited with UBC. It is undisputed that when Flores wrote to UBC in 2008 to obtain the funds he had deposited 15 years earlier, the bank did not offer to pay him principal or interest. In a response letter, the bank's officer referred to Flores as "our once-client," provided him no more information on the status of the $200,000 TCD than that UBC "no longer holds records from this time frame[,]" and insinuated that if the money is gone, it is Flores's fault for "never contact[ing] our Saipan Branch prior to closing." (Ex. E.) Flores alleges that he was never contacted by UBC "before, upon or after" the closing of the Saipan branch in 2001 to inform him of the status of his TCB. (Compl. ¶ 16.) UBC will have an opportunity to show that it exercised its duty of care to Flores at all relevant times since 1993, as Flores has made out a claim for negligence against that bank.

Flores has not alleged facts that show he was a customer of FHB or that he had any other relationship with FHB that created a duty of care. Flores's notion that FHB somehow had a duty

of care toward UBC's customers to ensure that all their assets were included in the 2001

purchase is unsupported by any facts pled in the Complaint. The negligence claim against FHB

must therefore be dismissed.

The CNMI has not recognized an independent cause of action for gross negligence. *See*

*Wei Hua Peng v. Commonwealth Gov't Dep't of Health,* No. 06-0050-CV (N. Mar. I. Super. Ct.

Jan. 18, 2007), 7 (gross-negligence cause of action not authorized by statute or recognized in

Restatements). Therefore, gross-negligence claims against UBC and FHB cannot be maintained.

### D. Breach of Fiduciary Duty

Flores alleges that UBC and FHB breached fiduciary duties of care and good faith by

failing to safeguard his investment. (Compl. ¶ 34.) The first element of such a claim is the

existence of a fiduciary relationship between the parties.

Generally speaking, banks do not owe fiduciary duties to depositors. A "debtor-creditor

relationship is not a fiduciary relationship as a matter of law." *Pommier v. Peoples Bank*

*Marycrest,* 967 F.2d 1115, 1119 (7th Cir. 1992). While most businesses are built on trust, "[t]he

fact that one party trusts the other is insufficient" to create a fiduciary relationship. *Id.* In

*Pommier*, the facts that the debtor and creditor had a history of working together, a payment plan

ran smoothly for years, and bank officers may have offered advice were "insufficient as a matter

of law to establish a fiduciary relationship." *Id. See also Morse v. Crocker Nat'l Bank,* 142 Cal.

App. 3d 228, 232 (Cal. App. 1st Dist. 1983) ("It is axiomatic that the relationship between a bank

and its depositor arising out of a general deposit is that of a debtor and creditor").

The CNMI banking statutes establish that generally a bank does not act as a fiduciary. It

is unlawful for a bank to act as a fiduciary unless authorized by its charter and qualified by

depositing certain evidences of indebtedness.  4 C.M.C. § 6531(a).  A bank holding an asset as a fiduciary must segregate it from other assets and record it "in a separate set of books maintained for fiduciary activities."  4 C.M.C. § 6533(a).  "Banking business" is defined as "engaging for profit, but not on an occasional, incidental or fiduciary basis, in the activity of accepting deposits . . ."  4 C.M.C. § 6103(c).

Fiduciary duties nonetheless may arise between a debtor and a creditor when "one party is dominated by the other." *Pommier,* 967 F.2d at 1119.  However, "no fiduciary duty exists in a lender-debtor relationship unless evidence is presented that the relationship was more than an arm's-length business transaction." *Cascade Invs., Inc. v. Bank of Am.,* N.A., 2000 U.S. Dist. LEXIS 21474 (D. Nev. Sept. 28, 2000).  This Court has previously recognized this principle: "Absent a special relationship, . . . banks do not owe a fiduciary duty to their customers; the relationship is merely contractual." *Aviation Indus. Reporting Sys., Inc. v. CNMI Travel Agency,* 2005 U.S. Dist. LEXIS 9703, *17 (D. N. Mar. I. Jan. 26, 2005) (*citing COBANK, ACB v. Reorganized Farmers Cooperative Assoc.,* 334 F. Supp. 2d 1273, 1277 (D. Kan. 2004)).  Courts should be wary of attempts to convert a breach-of-contract action into an action for breach of fiduciary duty, "drastically raising the stakes of the litigation by introducing the threat of punitive damages." *Portney v. CIBA Vision Corp.,* 2008 U.S. Dist. LEXIS 106677, *9–10 (C.D. Cal. July 17, 2008) (dismissing claim for breach of fiduciary duty where plaintiff did not sufficiently allege a fiduciary relationship between parties to licensing agreement).

In his Opposition, Flores asserts that he has pled facts establishing just such a special relationship.  The circumstances he points to, however – that Flores entrusted a large sum of money to UBC and was confident the bank would honor the TCD on presentment – do not set him apart from a typical depositor.  (Opp. at 8.)  Flores also alleges that UBC and FHB induced

him and failed to keep him informed.  (Opp. at 9.)  Nothing in the Complaint or attached

documents suggests that UBC induced Flores to take out the TCD or to do anything else.  As to a

failure to inform, this allegation seems to stem from Flores's misreading of some Florida cases

finding that a fiduciary duty to disclose the material facts of a transaction may be imposed when

a bank has knowledge of fraud or has held itself out to the depositor as a financial adviser.  *See*

*Hooper v. Barnett Bank of W. Fla.,* 474 So.2d 1253, 1257 (Fla. App. 1st Dist. 1985); *Capital*

*Bank v. MVB,* 644 So.2d 515, 519 (Fla. App. 3d Dist. 1994).  In both *Hooper* and *Capital Bank,*

bank officers closely advised the plaintiffs on their investments and withheld information

material to the investment decision.  *Id; see also Barnett Bank of W. Fla. v. Hooper,* 498 So.2d

923 (Fla. 1986).  Flores has not alleged that he purchased the TCD in 1993 in reliance on advice

from a UBC officer or that the purchase was anything but an arm's-length transaction.

Moreover, the breach that Flores has alleged concerns failure to maintain accurate records and

safeguard his investment, not failure to disclose material facts.

Because the general rule is that no fiduciary relationship exists between a bank and a

depositor, and Flores has not pled facts showing that a special fiduciary duty arose, the claim of

breach of fiduciary duty against UBC and FHB must be dismissed.


### E.  Fraud

Flores alleges that UBC or FHB, or both, took his money with "no intention of returning

both principal and interest."  (Compl. ¶ 38.)  This accusation is couched as a claim of fraud.  He

alleges that UBC intentionally never recorded the 1993 TCD so that it could keep his $200,000;

or the two banks colluded to keep his account off the books of FHB's 2001 purchase of UBC's

Saipan assets; or FHB intentionally did not record the TCD in its own ledger.  (Compl. ¶¶ 38–

40.)  To the extent the fraud allegations go to Flores's decision to purchase the TCD in 1993, the claim sounds in contract.  Claims grounded in allegations of subsequent fraudulent misrepresentations by the banks sound in tort.

The CNMI courts turn to the Restatements for the elements of fraudulent misrepresentation.  *See Rogolofoi v. Guerrero,* 2 N. Mar. I. 468, 474 (N. Mar. I. 1992) (contract claim); *Pangelinan v. Itaman,* 4 N. Mar. I. 114, 119 (N. Mar. I. 1994) (tort claim); *Boddy v. Guerrero,* 1997 MP 23 ¶ 8 (N. Mar. I. 1997) (tort claim).  A misrepresentation is fraudulent if the maker "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies."  RESTATEMENT (SECOND) OF TORTS § 526.  The three elements as set forth in RESTATEMENT (SECOND) OF CONTRACTS § 162 are substantially similar.  To be fraudulent, a misrepresentation "must not only be consciously false but must also be intended to mislead another."  *Id.* § 162 cmt. a.  Justifiable reliance on a fraudulent misrepresentation that induced a party to assent to a contract may make the contract voidable.  *Id.* § 164.  A plaintiff may obtain damages upon a showing that he justifiably relied on the misrepresentation and that the defendant induced reliance.  *See* RESTATEMENT (SECOND) OF TORTS § 525.

Flores has not pointed to any misrepresentation by UBC that induced him to purchase the TCD in 1993.  Although he states that he "understood" that the TCD would renew automatically every month and would thus be a long-term investment, he does not say how he came to this understanding or identify who (if anyone) at UBC told him the TCD would self-renew.  To the contrary, the TCD is labeled as a "FIXED MATURITY TIME DEPOSIT"; also, the face of the

1   certificate clearly states that it "matures on Oct. 12, 1993 (32 days)" and that it "earns no interest

2   after maturity." (Ex. A.)

3          When UBC closed its Saipan branch in November 2001, Flores took no action

4   whatsoever with respect to the TCD.  Even if the pleadings showed a misrepresentation that

5   UBC or FHB made to him at that time – and they do not – he has not pled that he acted, or

6   forbore from acting, in justifiable reliance on such a misrepresentation.   The only period from

7   which Flores alleges actual statements by identifiable UBC and FHB officers is 2008 to 2011.

8   The Complaint implies that UBC's officer intentionally misrepresented facts to him when she

9   wrote to him that the bank "no longer holds records from this time frame [i.e., 1993]."[6] (Ex. E.)

10  Flores also disbelieves FHB's repeated assertion that it did not purchase his TCD.  Yet for this

11  period, too, what detrimental action did Flores take in justifiable reliance on any alleged

12  misrepresentation?  The only action apparent in the pleadings is this lawsuit, which Flores

13  threatened in a letter to FHB on July 13, 2011. (Ex. G.)

14         In his Opposition, Flores makes additional allegations to support his fraud claim: that he

15  was "given false information that his CD could not be redeemed unless he gave the bank his

16  original certificate"; that "[a]n officer or employee of Defendant FHB inferred [*sic*] that

17  Plaintiff's CD was still intact and told Plaintiff that she would check the [*sic*] with Defendant

18  Union Bank about the CD." (Opp. at 10–11.)  These allegations are not properly before the

19  Court because they were not pled in the Complaint or in an amended complaint. *See Drazan v.*

20  *Atl. Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 64345 (N.D. Cal. June 29, 2010), *11–16 (additional

21  allegations made in opposition brief against successor insurance company must be pled in

22  amended complaint).

---

[6] The Complaint alleges that in its letter UBC "denied any knowledge of the [T]CD . . ." (Compl. ¶ 19.)

In sum, all that Flores has set forth in support of the fraud claim against the two banks is a series of labels and conclusions couched as factual allegations. Even before *Iqbal* and *Twombley,* such pleading was insufficient to survive a motion to dismiss. *See United States ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n.2 (9th Cir. 1986) ("While the court generally must assume factual allegations to be true, it need not assume the truth of legal conclusions cast in the form of factual allegations."). The allegation that a national bank issued a standard certificate of deposit with no intention of honoring the contract, or that it is intentionally feigning lack of knowledge of its obligations to a depositor, defies common sense and is, at the very least, implausible. The claim of fraud against both banks is inadequately pled under the fairly relaxed standards of Rule 8, let alone under the stricter standards for pleading fraud set forth in Rule 9.

## V. Leave to Amend

The remaining question is whether to grant Flores leave to amend the Complaint. A trial court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). The decision whether to allow amendment is within the discretion of the district court. *See Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir. 2008). Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

As to the causes of action for unjust enrichment and gross negligence, amendment would be futile.  Hence, these claims are dismissed with prejudice.  As to the remaining causes of action, the Court cannot say that the defects in the pleading are incurable or that Flores has given the Court cause to dismiss the claims with prejudice.  Therefore, Flores is granted leave to amend the Complaint, except with respect to the claims of unjust enrichment and gross negligence.

## VI.    Conclusion

For these reasons, Defendant First Hawaiian Bank's motion to dismiss is hereby GRANTED.  The claims of unjust enrichment and gross negligence are dismissed with prejudice; all other claims against First Hawaiian Bank are dismissed without prejudice.

Furthermore, Defendant Union Bank of California's motion to dismiss is hereby GRANTED IN PART and DENIED IN PART.  Plaintiff's claims against Union Bank of California for unjust enrichment and gross negligence are dismissed with prejudice; the claims for breach of fiduciary duty and fraud are dismissed without prejudice.

**IT IS SO ORDERED** this 15th day of February, 2012.

RAMONA V. MANGLONA
Chief Judge