1

2

3

4      **IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

5

6    DONALD G. FLORES,                    )  Case No.: 1:11-CV-00022
                                          )
7            Plaintiff,                    )  **MEMORANDUM OPINION AND**
                                          )  **ORDER GRANTING FIRST HAWAIIAN**
8    v.                                    )  **BANK'S MOTION TO DISMISS FIRST**
                                          )  **AMENDED COMPLAINT**
9    FIRST HAWAIIAN BANK and UNION        )
10   BANK OF CALIFORNIA,                   )
                                          )
11           Defendants.                   )
                                          )
12   _____       )

13

14         Defendant First Hawaiian Bank ("First Hawaiian") moves to dismiss the First Amended

15   Complaint.[1]  The Court has considered all the papers,[2] as well as oral argument made by counsel

16   for First Hawaiian and for Plaintiff Donald G. Flores ("Flores") at a hearing on April 12, 2012,

17

18   and is now prepared to rule.

19

20   **I.  BACKGROUND**

21

22         This case is about Flores's attempt to get either First Hawaiian or Union Bank of

23   California ("Union Bank") to honor a 32-day, $200,000 certificate of deposit ("CD") that he

24   purchased from Union Bank's Saipan branch in 1993 and presented to both banks in 2008.

25   _____

26   [1] The other Defendant, Union Bank of California, has not moved to dismiss or joined in First Hawaiian's motion.

27   [2] First Amended Complaint ("FAC"), ECF No. 24; Errata to Plaintiff's FAC, ECF No. 25; Motion to Dismiss FAC ("MTD"), ECF No. 28; Memorandum in Support of MTD ("Memo."), ECF No. 29;
28   Plaintiff's Memorandum in Opposition to MTD ("Opp."), ECF No. 34; and Reply Memorandum in Support of MTD ("Reply"), ECF No. 37.

Flores believes First Hawaiian is obligated to honor the CD because in 2001, First Hawaiian purchased Union Bank's Saipan assets and took over operation of the branch office.

Previously, the Court found that Flores may maintain an action against Union Bank for breach of contract and negligence, but dismissed the original complaint against First Hawaiian for failure to state a claim.  (Memorandum Opinion and Order, hereafter "Order," ECF No. 23.) The Court dismissed claims of gross negligence and unjust enrichment with prejudice, but dismissed all other claims without prejudice and with leave to amend to cure defects in the pleading.  (*Id.* at 21.)  Those defects stemmed mainly from the paucity of allegations to support a plausible inference that First Hawaiian succeeded to Union Bank's obligation to pay out on Flores's CD.  (*Id.* at 11–12.)

In the First Amended Complaint ("FAC"), Flores revives the claims against First Hawaiian for breach of contract, negligence, and fraud, and brings two new claims: violation of the Consumer Protection Act ("CPA") (second cause of action) and bad faith (fourth cause of action).  He pleads additional facts to cure the defects in the original complaint.  First Hawaiian asserts, in support of its motion to dismiss the FAC, that the new facts actually make Flores's claims less plausible than they were before.  (Memo. at 5.)  Furthermore, First Hawaiian urges the Court to dismiss the two added claims as "improper attempts to expand this action after dismissal."  (*Id.* at 2.)

The additional facts pled in the FAC may be summarized as follows:

Flores provides more details about the September 10, 1993, purchase of the CD.  (*See* FAC ¶¶ 6–13.)  He names the Union Bank officer he spoke with, Lourdes Salas Deleon Guerrero ("Deleon Guerrero").  He states that he told Deleon Guerrero he was about to leave Saipan indefinitely because of his wife's sudden illness.  He states that Deleon Guerrero assured him

that the CD would roll over and continue to earn interest until canceled or redeemed, and that it was a safe way to invest money.

Flores recounts a second meeting with Deleon Guerrero, in 1999.  (*See id.* ¶¶ 16–19.)  On February 10, Flores went to Union Bank's Saipan branch and told Deleon Guerrero he could not find the CD.  She asked him for his social security number, left her desk for about ten minutes to check records, returned and told Flores there was no record.  She instructed him to come back with the CD when he finds it.

Deleon Guerrero continued to work at the Saipan branch location after First Hawaiian purchased Union Bank's Saipan assets in November 2001.  (*See id.* ¶¶ 22.)

In March 2008, Flores's wife found the CD and went with her husband to see Victoria Concepcion at First Hawaiian in Saipan.  (*See id.* ¶¶ 26–28.)  They presented the CD to Concepcion.  She told them that no record of the CD was showing in the computer.  A week later, when Flores returned to the branch, Concepcion told him that there was no paper record in the boxes upstairs.  She "insinuated that First Hawaiian had nothing to do with the CD" and said that Flores should contact Union Bank's main office in San Diego.  (*Id.* ¶ 28.)

## II.  APPLICABLE STANDARDS

The standards for determining whether the FAC states claims against First Hawaiian upon which relief can be granted, pursuant to Federal Rule of Criminal Procedure 12(b)(6), are the same as those that the Court applied previously to evaluate the sufficiency of the original complaint.  (*See* Order at 6–9.)  The evaluation process involves two steps.  First, the court identifies and discards unsupported legal conclusions couched as factual allegations; then, taking all well-pleaded allegations as true, it determines "whether they plausibly give rise to an

1  entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937, 1950 (2009). Fraud

2  claims, in addition to being plausible, must be pleaded with particularity as to "the who, what,

3  when, where, and how of the misconduct alleged." *Cooper v. Pickett,* 137 F.3d 616, 627 (9th

4  Cir. 1997); *see also Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011);

5  Fed. R. Civ. P. 9(b). The substantive law of the Commonwealth of the Northern Mariana

6  Islands ("CNMI") applies in this diversity case. *See Nevada Power Co. v. Monsanto Co.,* 955

7  F.2d 1304, 1306 (9th Cir. 1992) (federal court sitting in diversity applies state substantive law).

8

9

10  **III.   DISCUSSION**

11

12      A. *Leave to Amend to Add New Causes of Action*

13      The Court will allow Flores to add the CPA and bad-faith claims. In general, a party may

14  amend a complaint once as a matter of course within 21 days after service of an answer or a

15  motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). After that, a party may amend "only with the

16  opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The district

17  court should "freely give leave when justice so requires." *Id.* "Rule 15's policy of favoring

18  amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb,*

19  655 F.2d 977, 979 (9th Cir. 1981) (internal citation omitted). Liberality in granting leave to

20  amend "is not dependent on whether the amendment will add causes of action or parties. It is,

21  however, subject to the qualification that amendment of the complaint does not cause the

22

23  opposing party undue prejudice." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.

24  1987).

25

26      In determining whether to grant leave, the court should weigh four factors: "bad faith,

27  undue delay, prejudice to the opposing party, and futility of amendment." *Id.* "Late

28

1  amendments to assert new theories are not reviewed favorably when the facts and the theory

2  have been known to the party seeking amendment since the inception of the cause of action."

3  *Acri v. International Ass'n of Machinists,* 781 F.2d 1393, 1398 (9th Cir. 1986).

4      Flores's FAC was filed well outside the time afforded for amendments without consent or

5  leave.  Flores maintains that the Court granted him unrestricted leave to amend his complaint.

6  (Opp. at 16.)  The Court disagrees.  The scope of the leave to amend clearly was limited to

7  curing defects in the dismissed claims and did not authorize Flores to assert new theories of

8  recovery.  *Cf. FDIC v. Kooyomjian,* 220 F.3d 10, 15 (1st Cir. 2000) (affirming district court's

9  striking of two new claims brought after grant of leave to amend for limited purpose).  When

10 Flores filed the FAC, he should have moved for leave to amend to add the two new causes of

11 action.  The Court understands from Flores's representations at the April 12 hearing that he now

12 seeks leave to so amend.

13     First Hawaiian asserts that leave to amend to add new claims should be denied because

14 the claims are "not based on facts or circumstances that only recently came to light."  (Memo. at

15 7.)  Flores does not dispute that characterization.  He maintains, however, that the other factors

16 weigh in favor of granting leave to amend.  (*See* Opp. at 15.)  On this point, the Court agrees

17 with him.  The delay in bringing the new claims is not extreme.  This is the first time Flores has

18 amended the complaint.  Most important, prejudice to First Hawaiian is slight; the parties have

19 not engaged in any discovery yet, and a trial date has not been set.  Therefore, the Court grants

20 leave to amend the pleadings to include causes of action for violation of the CPA and bad faith as

21 against First Hawaiian.[3]

---

[3] Flores has also amended the complaint without leave to add the same two causes of action against the other defendant, Union Bank.  The propriety of those amendments is not before the Court on First Hawaiian's Motion.  The Court notes, however, that Union Bank has answered the FAC (see ECF No. 30)

1

2

B.   *Sufficiency of the FAC'S Claims*

    1.   <u>Breach of Contract and Negligence</u>

In the original complaint, the defect in the pleading of claims for breach of contract and negligence was that Flores had failed to make factual allegations that plausibly suggested First Hawaiian had succeeded to Union Bank's obligations on the CD and owed a duty of care toward Flores.  (*See* Order at 11–15.)  The FAC fares no better.  In addition to realleging facts pled in the original complaint, the FAC indicates that as early as February 1999, more than two years before First Hawaiian acquired Union Bank's Saipan assets, Union Bank had lost track of Flores's CD.  This new disclosure makes it even less plausible that Flores's CD was among the assets that First Hawaiian purchased from Union Bank in November 2001.  If Union Bank negligently failed to record the CD or intentionally purged it from its records as early as 1999, it stands to reason that the account was not transferred to First Hawaiian as part of the 2001 asset purchase.  The fact that the Union Bank officer who sold Flores the CD in 1993 stayed on to work for First Hawaiian after 2001 is irrelevant – it does not make it more or less likely that First Hawaiian succeeded to Union Bank's obligations on the Flores CD.

Flores contends that First Hawaiian employee Concepcion's conduct, when Flores and his wife brought her the CD in March 2008, indicates that First Hawaiian owed duties and obligations to Flores on the CD.  (Opp. at 11.)  On that occasion, Concepcion searched in vain for an electronic or paper record of Flores's CD.  The implication, in Flores's view, is that Concepcion expected to find such a record.  This behavior might support Flores's theory if First

and did not object to the amendments therein.  Failure to object under such circumstances may indicate consent.  *See, e.g., Professional Air Sys. & Equip. v. Dresser Indus.,* 1995 U.S. Dist. LEXIS 15921 (W.D. Mich. Oct. 3, 1995); *also* 6 Charles A. Wright, Arthur R. Miller, Mary K. Kane, Federal Practice and Procedure § 1490 (1990) ("consent may be implied from an act of the party indicating an acquiescence in the amendment, especially if that act is evidence by a writing").

Hawaiian had otherwise denied any business involvement with Union Bank. But First Hawaiian has never denied the obvious: that it purchased Saipan assets from Union Bank in 2001. Flores acknowledges that on August 25, 2009, he received a letter from Rene Chinen, a First Hawaiian vice president in Honolulu, telling him that a cross reference file and a trial balance report from Union Bank's last day of business in Saipan contain no record that the CD was part of the 2001 transaction. (*See* FAC ¶ 30; Order at 4.) Concepcion's conduct was consistent with Chinen's. Both of them recognized it was possible First Hawaiian had acquired the debt and were trying to help out.

Flores seems to believe that in acquiring Saipan assets from Union Bank, First Hawaiian owed a duty to Union Bank's customers to make sure that all of their accounts were included in the purchase and assumption agreement.[4] He casts himself as an "intended beneficiary" of the contract between the two banks, even if his CD account was not identified in the records of the transaction. (*See* Opp. at 9, citing RESTATEMENT (SECOND) OF CONTRACTS §§ 304, 308.) In other words, even if First Hawaiian did not actually acquire Flores's CD, it *should* have acquired it. Flores's theory of recovery presupposes that First Hawaiian meant to assume all of Union Bank's Saipan branch debts, both known and unknown, as of November 15, 2001. It is not plausible, however, that First Hawaiian would have intended to take on an undetermined, and indeterminate, amount of debt – at least hundreds of thousands of dollars – as part of a rational business transaction with another private bank.

In total, the factual allegations in the FAC do not plausibly suggest that Union Bank transferred to First Hawaiian its obligations on Flores's CD. Therefore, Flores has not made out a claim for relief against First Hawaiian in breach of contract or negligence.

---

[4] The agreement between First Hawaiian and Union Bank governing the Saipan transaction is not part of the record on this Motion to Dismiss.

2. Fraud

Flores claims that First Hawaiian, through some of the same officers and employees that had worked for Union Bank in Saipan, knowingly and intentionally participated in "fraudulent cover-up and withholding of information of the status of Flores CD, for the benefit of First Hawaiian."  (FAC § 87.)  Even if this conspiracy to defraud actually happened, Flores did not fall for it.  He never believed the alleged misrepresentation and so never acted, or forebore from acting, in justifiable reliance on it or suffered an injury because of it.  *See* RESTATEMENT (SECOND) OF TORTS § 525.  Therefore, he has not made out a claim for relief from fraud.

3. Consumer Protection Act

The CNMI Consumer Protection Act "[p]rohibit[s] practices by merchants which deceive, mislead, or confuse the consumer."  4 CMC § 5102(b)(1).  The act provides for a private right of action.  4 CMC § 5112(a).  The plaintiff must prove that the defendant committed "(1) an unlawful act or practice, (2) in the conduct of trade or commerce."  *Isla Financial Services v. Sablan,* 2001 MP 21 ¶ 23.  A defendant is liable if he or she "acted in a way that was unfair or would likely cause confusion to a hypothetical person."  *Id.* ¶ 24.

Flores claims that First Hawaiian violated the CPA "by accepting Two Hundred Thousand Dollars ($200,000) deposit and other deposits, which were transferred to First Hawaiian by Union Bank and then refusing to pay Flores his money upon demand . . ."  (Opp. at 13.)  The claim is not plausible.  As stated earlier, it is predicated on a presumption, not borne out by the facts as pled, that in November 2001 First Hawaiian must have taken on the obligation to pay Flores upon presentment of the CD.

Even if express assumption of the debt cannot be shown, Flores seems to believe that any $200,000 sitting in the vault when First Hawaiian took over the Saipan branch must be *his*

$200,000, consigned to First Hawaiian for safe keeping. This is not a sound legal theory on which to base recovery. Flores did not leave money in a safe deposit box; he deposited money in a bank. *See Morse v. Crocker Nat'l Bank,* 142 Cal. App. 3d 228, 232 (Cal. App. 1st Dist. 1983) (debtor-creditor relationship of bank and depositor). His expectation was not that at some future time Union Bank would "return" his $200,000 but that the bank would *pay* him $200,000, with interest. Any confusion about this is not of First Hawaiian's making. For these reasons, Flores has failed to make out a claim for relief against First Hawaiian under the Consumer Protection Act.

4.    Bad Faith

Flores claims that he is entitled to damages, pursuant to 5 CMC § 4103(5), suffered as a consequence of First Hawaiian's bad-faith "refusal to honor Flores' presentation of his CD[.]" (FAC ¶¶ 77–77.) The Uniform Commercial Code of the Northern Mariana Islands allows a person who prevails on a negligence claim with respect to the "handling [of] an item" to recover consequential damages where there is bad faith. 5 CMC § 4103(5). Thus, Flores is not really asserting a separate cause of action for bad faith, but is giving notice that he will ask for statutory consequential damages. *Cf. D.R. Horton v. Travelers Indem. Co. of Am.,* 2012 U.S. Dist. LEXIS 49203, 9-10 (D. Colo. 2012) (permitting amendment to recover statutory bad-faith damages in addition to compensatory damages on breach-of-contract claim).

Flores has not pled facts that, if true, would entitle him to consequential damages. For section 4103(5) damages to apply, Flores would have to show that First Hawaiian mishandled an item. An item is "any instrument for the payment of money even though it is not negotiable but does not include money[.]" 5 CMC § 4104(g). In this case, the instrument is Flores's CD. It is

not alleged that First Hawaiian ever handled the CD; it has been in Flores's possession continuously since he purchased it from Union Bank in 1993.

After First Hawaiian pointed this out in the memorandum supporting its Motion to Dismiss (Memo. at 9), Flores switched to the position that the item was First Hawaiian's *record* of his CD (Opp. at 22). In so doing, Flores does not properly defend against First Hawaiian's argument. As the Court stated in the Order dismissing First Hawaiian from the original complaint, allegations made for the first time in an opposition brief will not be considered in determining the sufficiency of a pleading. (*See* Order at 19.)

It would be futile, however, to amend the FAC to allege that a record of the CD is an item. To be an item, a record would have to be an instrument. An instrument is "a written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Black's Law Dictionary 869 (9th ed. 2009). A record may be evidence that an instrument for the payment of money exists, but it is not the instrument itself. Flores cannot recover damages under 5 CMC § 4103(5) merely on a showing that First Hawaiian mishandled its own record.

**IV. CONCLUSION**

For the foregoing reasons, First Hawaiian Bank's Motion to Dismiss is GRANTED. Plaintiff has had years to investigate this matter before filing suit, and to develop factual allegations that would plausibly support his claims against First Hawaiian, but has failed to do so. *Cf. Ash Grove Cement Co. v. MMR Constructors, Inc.,* 2011 U.S. Dist. LEXIS 96585 (W.D. Ark. Aug. 29, 2011) ("A plaintiff, who is bound by the 'plausibility' standard under Rule 8(a), has sufficient time to investigate claims before the filing of a complaint, and can plead the facts

with more particularity based on his investigation and knowledge of the claim.").  Still, if discovery on the remaining causes of action against Union Bank brings to light documentary or other hard evidence that First Hawaiian acquired Flores's CD in the 2001 asset purchase, justice may require that Flores be permitted to amend again.  Therefore, the dismissal is without prejudice.

**SO ORDERED** on May 2, 2012.

_____

RAMONA V. MANGLONA, Chief Judge