F I L E D
Clerk
District Court

APR 06 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

DERRON GERARD FLORES, AS
ADMINISTRATOR OF THE ESTATE OF
DONALD G. FLORES,

        Plaintiff,

vs.

MUFG UNION BANK N.A.,

        Defendant.

Case No.: 11-cv-0022

**DECISION AND ORDER GRANTING IN
PART AND DENYING IN PART
DEFENDANT UNION BANK'S MOTIONS
FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Derron Gerard Flores, as Administrator of the Estate of Donald G. Flores, ("Derron") brings this action against Defendant MUFG Union Bank N.A. ("Union Bank") to collect principal and interest on a $200,000, 32-day certificate of deposit twenty four years after his father, Donald G. Flores ("Flores"), took it out at Union Bank in 1993. There are three pending summary judgment motions in this case: (1) Motion for Partial Summary Judgment as to Plaintiff's Claims of Violation of the Consumer Protection Act and Roll Over Interest Rate (ECF No. 80); (2) Motion for Partial Summary Judgment as to Plaintiff's Claims of Fraud, Bad Faith, and Punitive Damages (ECF No. 82); and (3) Motion for Summary Judgment as to Plaintiff's CNMI Consumer Protection Act Cause of Action. (ECF No. 122.) The motions have been fully briefed.[1] After consideration of all the papers, hearing argument of counsel for both parties, and

---

[1] *See* Opp'n to Mot. for Partial SJ re CPA and Roll Over Interest Rate (ECF No. 86); Reply in Support of Mot. for Partial SJ re CPA (ECF No. 96); Opp'n to Mot. for Partial SJ as to Claims for Fraud, Bad Faith, and Punitive Damages (ECF No. 88); Reply in Support of Mot. for Partial SJ re Claims for Fraud, Bad Faith, and Punitive Damages (ECF No. 97); Opp'n to Mot. for SJ as to CPA (ECF No. 126); Reply in Support of Mot. for SJ re: CPA (ECF No. 127).

a review of the applicable law, the Court grants in part and denies in part Union Bank's motions. In particular, the Court denies Union Bank's motion for partial summary judgment with respect to the CPA claim based on the argument that Union Bank was not a "merchant" under the CPA. (ECF No. 80.) The Court grants Union Bank's motion for partial summary judgment with respect to the rollover interest rate and punitive damages under the bad faith and fraud claims. (ECF Nos. 80, 82), and grants Union Bank's motion for summary judgment with respect to the CPA claim based on the argument that the CPA cause of action did not survive Flores' death and may not be brought by his Estate. (ECF No. 122.)

## II.    UNDISPUTED FACTS

On September 10, 1993, Donald Flores went to the Oleai branch of Union Bank in Saipan to cash a $280,000 check he had received in a land transaction. (First Amended Complaint ("FAC") ¶ 6.)[2] After cashing the check, he kept $80,000 in cash and invested $200,000 in a fixed-maturity time certificate of deposit ("TCD"). (FAC ¶¶ 6, 10.) The non-negotiable, non-transferable TCD matured on October 12, 1993 (32 days), and earned 2.5 percent interest payable at maturity. (Copy of TCD, Ex. 4, ECF No. 83-1.) Printed on the front of the TCD is a disclaimer: "This certificate earns no interest after maturity . . ." (*Id.*) The TCD was payable to "Donald G. Flores Only" and was payable to him "upon maturity, presentation and surrender of this certificate, properly endorsed at the office of issue." (*Id.*) Lourdes ("Lou") S. Deleon Guerrero, a Union Bank officer, helped Flores take out the TCD and signed the TCD as Union Bank's authorized agent. (Donald G. Flores Deposition ("Flores Deposition"), ECF No. 83-1, ex.

---

[2] The purported verification of the FAC is defective because it was not made under penalty of perjury as required by 28 U.S.C. § 1746. Union Bank has not objected to consideration of the FAC as evidence supporting summary judgment as it included the FAC as an exhibit to its summary judgment motions and cited from it liberally in its own statements of undisputed facts. In the absence of an objection, the undisputed facts in the FAC may support summary judgment. *See Faulkner v. Fed'n of Preschool & Cmty. Educ. Ctrs.*, 564 F.2d 327, 328 (9th Cir. 1977) (per curiam).

3, 40:10–16;[3] FAC ¶ 7.) At the time, Flores' wife, Cecilia Flores ("Cecilia"), was seriously ill and in need of costly, off-island medical treatment. (*Id.* 44:19 – 45:18.) When Flores asked Lou what would happen if he didn't take the CD out, she told him "your money will roll over." (*Id.* 48:3–8.)

After Flores purchased the TCD, he and Cecilia left for California, where Cecilia received medical treatment. (*Id.* 49:7–50:6.) Over the next few years, Cecilia stayed in California, but Flores traveled periodically to Saipan to manage his farming business. (*Id.*) During a visit to Saipan in April 1994, Flores went to Union Bank's Oleai branch to check on his checking account, but he did not inquire about the TCD. (*Id.* 58:14–59:16.) Flores did not intend to redeem the TCD at that time. (*Id.* 80:19–25.)

In February 1999, Flores returned to Saipan when he and Cecilia were running low on funds to continue paying for her medical needs. (*Id.* 60:24–61:10.) On or about February 10, 1999, Flores went to Union Bank's Oleai branch and asked Lou if she remembered the $200,000 TCD. (*Id.* 61:11–19.) Flores had been unable to locate the original TCD and had no paperwork with him when he went to the bank that day. (*Id.* 62:13–25.) Lou remembered that Flores had purchased the TCD. (*Id.* 81:9–14.) She searched the bank's records using Flores' social security number, but she was unable to find a record of the TCD. (*Id.* 63:12–17.) When Flores asked how he could obtain his money, Lou told him, "When you find your certificate, bring and show it to us." (*Id.*) There was no discussion of other ways that Flores might be able to get his money if he could not find the TCD. (*Id.* 82:5–17.) Flores did not speak to anyone else at Union Bank regarding his TCD between February 1999 and March 2008. (*Id.* 62:04–06; 65:15–20; 66:6–12.) Flores continued to search for the original TCD during that time period because he believed that the original TCD must be produced to the bank in order to get his money back. (FAC ¶ 25.)

---

[3] Page references are to the ECF pagination and line numbers.

3

Ken Kato was Union Bank's Oleai branch manager at the time Flores purchased his TCD. (Decl. of Ken Kato ¶ 4, ECF No. 83-4.) Union Bank had a written policy to retain account records, including records of certificate of deposits, for seven and a half years after an account was closed. (*Id*. ¶ 6.) In the event a customer lost the original TCD, Union Bank would allow the customer to redeem it so long as Union Bank had records showing the TCD had not yet been redeemed. (*Id*. ¶ 8.) The customer would then be asked to sign an agreement indemnifying the bank in case the original was later located and redeemed. (*Id*.) The indemnification agreement would be attached to Union Bank's copy of the TCD, and a Union Bank officer would need to approve the entire transaction. (*Id*.)

On November 8, 2001, Union Bank sold its Saipan and Guam assets and liabilities to First Hawaiian Bank ("FHB"). (*Id*. ¶¶ 3, 10.) Prior to the sale, Union Bank mailed letters to all its customers, including certificate of deposit holders, advising them of the sale and explaining how their accounts would be handled. (*Id*. ¶ 10.) Even after the sale, FHB sent correspondence to its account holders about the transition of their Union Bank accounts to FHB. (*Id.*) Flores did not know about the sale at the time it occurred but instead learned about it through media coverage. (Flores Deposition, 86:12–24.) By September 2003, Flores had opened an FHB checking account and was aware that FHB had bought the assets and liabilities of Union Bank's Oleai branch. (*Id*. 87:7–88:3.) However, between February 1999 and March 2008, Flores made no attempt to cash, redeem, or otherwise obtain the principal and interest from his TCD. (*Id*. 88:8–13.)

In March 2008, Cecilia found the original TCD. (*Id*. 88:4–7.) Flores immediately contacted FHB and met on Saipan with Victoria Concepcion, an FHB employee. (Deposition of Victoria Concepcion ("Concepcion Deposition"), ECF No. 83-1.) When he showed the TCD to Victoria, she told him to check with Union Bank because FHB did not have any records of his TCD. (*Id*. 123:15-18.)

On June 10, 2008, Flores's attorney Jose S. Dela Cruz sent a letter to Union Bank's corporate headquarters in San Diego, California. (Ex. C, ECF No. 83-1.) Dela Cruz enclosed a copy of the original TCD. (*Id*.) He advised Union Bank that Flores wanted to withdraw the $200,000 principal and "all the interest that such principal amount has generated since the date of deposit—September 10, 1993." (*Id*.) Flores did not receive a response. (Ex. D, ECF No. 83-1.) Three months later, Dela Cruz wrote a second letter addressed to Union Bank's main branch in San Diego. (*Id*.) Dela Cruz stated that he had not received a reply to his June 10 letter to corporate headquarters and enclosed a copy. (*Id*.) He asked the branch manager to respond as soon as possible and advised her that Flores would take "additional steps" if a reply was not forthcoming. (*Id*.)

On September 22, 2008, Cheryl Robbins of Union Bank's Office of the President, responded in writing to Dela Cruz. (Ex. E, ECF No. 83-1.) She acknowledged receipt of Dela Cruz's two letters. (*Id*.) She stated that because the TCD closed over ten years ago, Union Bank no longer had records from the time frame of Flores' TCD. (*Id*.) Due to the lapse of time, Union Bank was unable to assist him. (*Id*.) She advised Dela Cruz to file a claim with the State of California in order to determine whether the TCD had escheated. (*Id*.)

## III.    PROCEDURAL HISTORY

On September 22, 2011, Donald Flores filed suit against Union Bank and FHB in the Superior Court of the Commonwealth of the Northern Mariana Islands to recover compensatory and punitive damages for alleged breach of contract, unjust enrichment, negligence and gross negligence, fraud, and violation of the Commonwealth's Consumer Protection Act ("CPA"). (Complaint, attached to ECF No. 1.) FHB removed the action to federal court on the basis of diversity jurisdiction (FHB's Notice of Removal, ECF No. 1) and Union Bank joined in FHB's notice of removal, (ECF No. 8.)

On February 15, 2012, the Court dismissed all five claims against FHB. (Mem. Opinion and Order, ECF No. 23.) Flores' claims for unjust enrichment and gross negligence were dismissed with prejudice, while all other claims were dismissed without prejudice. (*Id.*) As to Union Bank, the Court dismissed Flores' claims for unjust enrichment and gross negligence with prejudice, while the claims for breach of fiduciary duty and fraud were dismissed without prejudice. (*Id.*) Flores was given leave to amend the Complaint, except with respect to the claims of unjust enrichment and gross negligence. (*Id.*)

On February 24, 2012, Flores filed his First Amended Complaint against both banks. (FAC, ECF No. 24.) The FAC alleged five causes of action: breach of contract, violation of the CNMI CPA, negligence, bad faith under the CNMI's Uniform Commercial Code, and fraud. (*Id.*) FHB moved to dismiss the FAC (Mot. to Dismiss FAC, ECF No. 28) and the Court granted FHB's motion and dismissed it without prejudice from the lawsuit. (Mem. Opinion and Order, ECF No. 42.)

Following FHB's dismissal from the case, Union Bank moved for summary judgment on grounds that all of Flores' causes of action are time barred—either by the applicable statutes of limitations or by the equitable doctrine of laches. (Mot. for Summ. J. due to Laches, ECF No. 81; Mot. for Partial Summ. J. re SOL, ECF No. 83.) Union Bank also moved for partial summary judgment as to Flores' claims of violation of the CPA and Roll Over Interest Rate (ECF No. 80), as well as partial summary judgment as to Flores' claims of fraud, bad faith, and punitive damages (ECF No. 82.) On November 8, 2013, the Court granted summary judgment to Union Bank on all claims on the grounds of statute of limitations and laches. (Decision and Order Grant. Def. Union Bank's Mot. for Summ. J. on Grounds of SOL and Laches ("Decision"), ECF No. 102.) Union Bank's remaining partial summary judgment motions (ECF Nos. 80, 82) were denied as moot. (*Id.*)

Flores timely appealed the Decision. (Notice of Appeal, ECF No. 104.) Flores unfortunately passed away during the pendency of the appeal on June 2, 2014. (Decl. of Sean Frink ¶ 3 and Ex. A, Appellant's Mot. for Substitution of Donald G. Flores as Plaintiff-Appellant, Ninth Circuit Court of Appeals Case No. 13-17434, Docket Entry No. 19 (June 10, 2014)). Subsequently, Flores' Estate was established in the CNMI Superior Court. (Civil Action No. 14-0134-CV.) Cecilia Flores, Flores' wife, was appointed Administrator of the Estate but also passed away during the pendency of the appeal in this matter. (Decl. of Juan Lizama., ECF No. 113.) Derron Flores, the only son of Donald and Cecilia Flores and the sole heir of Flores' Estate, was then appointed as Administrator of his father's Estate. (Decl. of Sean Frink ¶¶ 3-4; Ex. B, Order, CNMI Superior Court Civil Action No. 14-0134 (Dec. 1, 2015), ECF No. 123).

As the Administrator of Flores' Estate, Derron then filed a Motion to Substitute as the Plaintiff-Appellant in the appeal before the Ninth Circuit. (Decl. of Sean Frink ¶ 5; Ex. C, Mot. of Derron Gerard Flores to be the Substitute of Cecilia Josephine Flores as Plaintiff-Appellant, Ninth Circuit Court of Appeals Case No. 13-17434, Docket Entry Nos. 37-1, 37-2 (Nov. 30, 2015), ECF No. 123). On December 1, 2015, the Ninth Circuit granted Derron's motion to substitute and directed the Clerk of Court to substitute Derron Gerard Flores, administrator of the Estate of Donald G. Flores, as appellant in the appeal. (Decl. of Sean Frink ¶ 6; Ex. D, Order, Ninth Circuit Court of Appeals Case No. 13-17434, Docket Entry No. 39 (Dec. 1, 2015), ECF No. 123).

On March 4, 2016, the Ninth Circuit issued a memorandum affirming in part, reversing in part, and remanding the case for further proceedings. *Flores v. First Hawaiian Bank,* 642 Fed.Appx. 696 (9th Cir. 2016) (unpublished). The Ninth Circuit reversed this Court's decision that the statute of limitations began to run in 1999; instead, it found that the statute of limitations period began from September 22, 2008. *Id*. at 697. Based on this finding, the Ninth Circuit held

7

that decedent's contract claim, which was subject to a six year period of accrual, and CPA claim, which was subject to a four year period of accrual, were not barred by the statute of limitations. *Id*. at 698. Flores's tort claims, however, were time-barred because they were subject to a two year period of accrual. *Id*. Furthermore, the Ninth Circuit held that Flores's fraudulent concealment claim failed to toll the tort claims. *Id*. Even assuming that laches could apply in addition to the applicable statute of limitations, the doctrine of laches would not bar Flores' claims. *Id*. The remaining causes of action, therefore, are Flores's breach of contract claim and CPA claim. *Id.*

## IV.    LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). When ruling on a defendant's motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The judge's inquiry asks "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a

verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it[.]'" *Anderson*, 477 U.S. at 252 (*citing Schuylkill and Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

## V.    DISCUSSION

### A.    CNMI Consumer Protection Act Claim

Defendant Union Bank requests that Flores' CPA claim be dismissed because Union Bank was not a "merchant" under the CPA at the time of the alleged unlawful act or practice in 2008, and because the Estate of Donald G. Flores is not a "person" under the CPA entitled to bring a claim. (ECF No. 80 at 9-10, ECF No. 122 at 1, respectively.) Union Bank also argues that even if the Court found Union Bank to be a "merchant," Flores is not entitled to liquidated damages under the CPA because there is no evidence that Union Bank willfully violated the CPA. (ECF No. 80 at 11-12.) The Court will address each of the arguments in turn.

### 1.    Union Bank was a "merchant" under the CPA because the alleged unlawful act or practice started in 1999 and was complete in 2008 when Union Bank unequivocally refused to honor the TCD.

Union Bank argues that it was not a "merchant" subject to the CPA in September 2008 when Union Bank, through its Office of the President in California, refused to pay Flores' TCD because they no longer had any record of it. (ECF No. 80 at 10.) At the time of the refusal, Union Bank had already stopped doing business in the CNMI and surrendered its authority to transact business in the CNMI. (*Id.* at 10.) Flores contends, however, that the alleged unlawful act or practice started in 1999 when he first returned to Union Bank and was told that there was no record of his TCD. (Opp'n to Mot. for Partial SJ re Violation of CPA and Int Rate 8.) At this time, Union Bank was still engaged in commerce in the CNMI and considered a "merchant" subject to the CPA. (*Id.*) Flores does not cite a specific provision for his claim of violation of the CPA but instead references the CPA generally, 4 CMC § 5101 *et seq.* (FAC ¶¶ 51-55.)

A CPA violation consists of (1) an unlawful act or practice, (2) in the conduct of trade or commerce. *See Isla Financial Services v. Sablan*, 6 N.M.I. 338, 342 (2001) (citing 4 CMC § 5105). One of the purposes of the CPA is to "[p]rohibit practices by merchants which deceive, mislead, or confuse the consumer." 4 CMC § 5102(b)(1). "Merchant" means:

> any person required to have a business license from the Commonwealth to engage in commerce or any person who, from without the Commonwealth, engages in commerce within the Commonwealth or in any act essential to this commerce, or any person who conducts any lottery, game of chance, or entertainment within the Commonwealth, or any agent, broker, or other representative of such person.

4 CMC § 5104(f). Union Bank's motion for partial summary judgment asserts that because the alleged unlawful act or practice took place in 2008, it could not be considered a "merchant" under the CPA since it was no longer licensed to engage in commerce in the CNMI at the time. Based on the alleged facts, Flores' CPA claim appears to be based on two unlawful acts or practices listed under Section 5105 of the CPA. Section 5105(l) provides that it shall be unlawful to "engag[e] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." 4 CMC § 5105(l). Section 5105(m) provides that it shall be unlawful to "engag[e] in any act or practice which is unfair or deceptive to the consumer[.]" 4 CMC § 5105(m). Union Bank's motion focused on these two provisions, and so the Court will only address them.

The Commonwealth Supreme Court has previously addressed the issue of what creates a likelihood of confusion or misunderstanding, or is unfair or deceptive to the consumer under the CPA. *Isla Financial Services v. Sablan*, 2001 MP 21 ¶ 21 (N. Mar. I. 2001). The court found that the operative question was not whether the merchant actually deceived the consumer, but "whether [the merchant] acted in a way that was unfair or would likely cause confusion to a hypothetical person." *Id*. at ¶¶ 22-24 (internal citations omitted). The consumer "need only show that it was more probable than not that [the merchant's] conduct created a likelihood of

confusion or misunderstanding or was unfair or deceptive to a hypothetical consumer." *Id.* (*citing In re Estate of Barcinas*, 4 N.M.I. 149, 154 (N. Mar. I. 1994)).

A reasonable trier of fact could find that beginning in 1999, Union Bank created a likelihood of confusion or misunderstanding for Flores, because it knew that he had purchased a TCD with Union Bank but it did not have a record of it and he could not find the original copy. Even before agreeing to purchase the TCD, Flores alleges that Lou told him in the event he could not withdraw his TCD immediately upon maturity, a mere 32 days, the TCD would continue to exist with the interest rate rolling over. (Flores Deposition 48:3-6, ECF No. 83-1.) As a result, Flores purchased the TCD. (*Id.* 48:9-13.) Yet when Flores made his initial demand for his money in 1999, six years later, Union Bank did not pay him. (*Id.* 63:5-64:17.) Lou, the same Union Bank officer who authorized the TCD, told him that Union Bank lacked any record of the existence of the TCD, but that he could still come back with the original TCD. (*Id.*) From 1999 to 2008, Flores continued to look for the original TCD. (*Id.* 65:6-14.) Flores continued doing business with Union Bank, and then with FHB when they took over, but did not make any further demands until he found the original TCD. (*Id.* 65:15-20.) Flores "was made to believe that if he found his CD, he would be paid his CD[.]" (ECF No. 86 at 8-9; Flores Deposition 82:05-10.)

There is also evidence in which a reasonable trier of fact could find that Union Bank engaged in unfair or deceptive acts or practices throughout this time period which culminated when it unequivocally refused to honor Flores' original TCD in 2008. Flores justifiably relied on Lou's representations in 1999 that despite Union Bank's lack of records, he could still return to the bank with the original TCD. When Flores returned to the bank in 2008 with the original TCD, FHB (as the purchaser of Union Bank) indicated that he could not be paid because there was no record of his TCD. (FAC ¶ 27.) Flores then sent a copy of his original TCD to Union

Bank at its California headquarters and an office branch, and demanded payment of the principal and all interest due to him. (Ex. C, ECF No. 83-1.) Union Bank declined his two requests because it did not have any record of the TCD. (Ex. E, ECF No. 83-1.) Flores argues such acts deceived, misled, and confused him. (Opp'n to Mot. for Partial SJ re Violation of CPA and Int Rate 9.) Union Bank refused to honor the original TCD in 2008 even though, according to Flores, the TCD was never paid out. Flores has sufficiently alleged facts showing the denial of access to the principal and applicable interest for which he provided evidence that he was entitled.

The Ninth Circuit determined that the CPA claim accrued on September 22, 2008, *Flores v. First Hawaiian Bank,* 2016 WL 851607 at *1. This Court finds that there is sufficient evidence to enable a reasonable trier of fact to find that when the CPA claim accrued in 2008 due to Union Bank's unequivocal refusal to pay, that refusal related to the denial of the TCD's existence in 1999 and requirement that Flores produce the original TCD before the bank would pay. When Flores returned to Union Bank in 1999 to withdraw his 1993 TCD, he was still within the seven and a half year retention period for closed accounts. (Decl. of Ken Kato ¶ 6, ECF No. 83-4.) Lou told Flores, however, that there was no record of it. (Flores Deposition 63:12-17.) This was despite the fact that Lou was the same Union Bank officer who issued the TCD in 1993. (Flores Deposition 81:9–14.) It was only until 2008, when Flores' wife found the original TCD, that Flores was able to confirm with Union Bank the existence of his TCD. (Flores Deposition 88:4-7.) Because Union Bank's refusal to honor the TCD in 2008 completed the alleged unlawful act or practice and gave rise to the cause of action, a reasonable trier of fact could find that this conduct related back to Union Bank's initial denial of its existence in 1999 and notice to Flores that the original TCD was needed before payment would be made. In 1999, Union Bank was still a "merchant" subject to the CPA during the significant period from 1993 to 2001. (Decl. of Lisa

12

Rockwell ¶ 14, ECF No. 83-3.) Accordingly, Union Bank's motion for partial summary judgment on Flores' CPA claim based on the argument that it was not a merchant under the CPA is denied.

**2.    Donald Flores was a "person" under the CPA at the time he filed suit, but the CPA cause of action abated upon his death.**

Having determined that Union Bank was a "merchant" under the CPA, the Court now examines whether a cause of action under the CPA survives Flores' death so that it may be brought by his estate. Union Bank argues that it does not because estates are not "persons" under the CPA and consequently, Derron, as Administrator of Flores' Estate, cannot pursue a private cause of action under the CPA. (Def. Mot. for Summ. J. as to CPA 1-2, ECF No. 122.) Union Bank relies on the absence of any reference to "estates" or their ilk in the CPA's definition of "persons" as well as a CNMI Superior Court case that held that an estate could not bring a claim under the Act. (*Id.* at 5-7.) Plaintiff argues that the Superior Court decision is distinguishable because Donald Flores satisfied the definition of "person" at the time he initiated the CPA cause of action, and that his claim did not abate upon his death. (Opp'n to Mot. for Summ. J. as to CPA 5, ECF No. 126.) This Court agrees with Union Bank.

Only "person[s]" aggrieved as a result of a violation of the CPA may bring a CPA private cause of action. 4 CMC § 5112(a). The CPA defines a "person" to be "natural persons, corporations, firms, partnerships, joint stock companies, and associations or other organizations of persons." 4 CMC § 5104(g). Absent from this definition is any reference to estates or their like. The CPA's definition of "persons" derives from the Consumer Protection Act of 1989, CNMI Pub. L. 6-26. Prior to the adoption of Public Law 6-26, a "person" was defined under the CPA as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, *and any other legal entity*." 33 TTC § 352(1) (emphasis added). The catch-all

provision—"and any other legal entity"—was removed and replaced in 1989 with the narrower

language "or other organizations of persons." While a valid argument could be made that

"estates" fall into the former definition of "persons" as a legal entity, it is undisputed that it

cannot fall within the current definition.

More significantly, the CNMI Superior Court previously looked at this issue and

determined that estates are not "persons" under the CPA. The court in *Morita v. Scuba World,*

*Inc. et al.,* explained that:

> [o]nly those bodies listed under the [Consumer Protection Act] are entitled to bring
> a claim under the Act. *Estates are not included in those enumerated under the*
> *definition of "person," and cannot be construed as a consumer under the Act.* Thus,
> [the Estate] is not entitled to bring a claim or obtain relief under the [CPA].
> Accordingly, Defendant's Motion for Summary Judgment with respect to
> Plaintiff's Consumer Protection Act Cause of Action is GRANTED.

*Morita v. Scuba World, Inc. et al.,* Civ. No. 07-0248 at 3-4 (NMI Super. Ct. July 29, 2011)

(Order Granting Def.'s Mot. for Summ. J. re CPA and Granting Def.'s Mot. for Summ. J. re

Punitive Damages on Pls.' Wrongful Death Claim) (emphasis added). Estates are therefore

considered a separate legal entity. As such, Flores' Estate is not entitled to initiate a claim or

obtain relief under the CPA under the guise of "other organizations of persons."

Since estates do not qualify as "persons" entitled to bring a CPA claim, the question then

turns on whether the CPA claim abated upon the death of Flores, the consumer. There is no

question that Donald Flores initiated a valid CPA claim as a natural person aggrieved by an

alleged violation of the Act pursuant to 4 CMC § 5112(a). The CPA claim accrued in 2008, and

Flores timely filed suit in 2011. *See* 4 CMC § 5110 (four-year statute of limitations). Flores

passed away during the pendency of the appeal of this Court's decision granting summary

judgment to Union Bank. His son Derron is now the plaintiff as the administrator of Flores'

Estate. Since there is no dispute that Derron, as administrator of Flores' Estate, is a proper party,

the only remaining issue is whether the CPA claim was extinguished upon Flores' death. *See* Fed. R. Civ. P. 25(a)(1) (court may order substitution of the proper party if a party dies and the claim is not extinguished).

In determining whether the CPA claim, a statutory cause of action, survives the death of the consumer, we first look to the statute itself. "The most basic canon of statutory construction is that 'the [statutory] language must be given its plain meaning, where the meaning is clear and unambiguous.'" *Saipan Achugao Resort Members' Ass'n v. Yoon*, 2011 MP 12 ¶ 23 (N. Mar. I. 2011) (quoting *Calvo v. N. Mariana Islands Scholarship Advisory Bd.*, 2009 MP 2 ¶ 21 (N. Mar. I. 2009)). When the written law and local customary law are silent, Commonwealth courts then apply "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States[.]" 7 CMC § 3401; *see Ada v. Sablan,* 1 N.M.I. 415, 424 (1990).

Here, the CPA does not expressly provide for survival of a CPA claim upon the death of the consumer. Flores has failed to cite to any authority on point,4 and the Court has not found any relevant CNMI case law to support this proposition. "[U]nless some statute can be found providing for the survival of a statutory cause of action, the action abates upon the claimant's death." 1 Am. Jur. 2d *Statutory causes of action, generally § 59 (2017); Lornson v. Siddiqui*, 735

---

4 In his Opposition, Flores cites to two cases, but neither is on point. (Opp'n to Mot. for Summ. J. as to CPA, ECF No. 126.) In *U.S. ex rel. Colucci v. Beth Israel Medical Center*, 603 F.Supp.2d 677, 681 (S.D.N.Y. 2009), the district court held that a *qui tam* action under the False Claims Act ("FCA") can survive the death of the relator. When a federal statute contains no explicit statement on the right of survivability, as is the case here, the general rule under federal common law is that claims under federal statutes survive a plaintiff's death if the statute is remedial, not penal. *Id.* at 680 (*citing Ex parte Schreiber*, 110 U.S. 76, 80 (1884)). *Qui tam* actions are distinguishable from statutory causes of action. The issue of survivability as to *qui tam* actions focuses on the remedial or penal nature of the statute whereas statutory causes of action are analyzed in terms of whether survival is specified in the statute itself or in another statute. *Compare* 1 Am. Jur. 2d § 59 *Statutory causes of action, generally* (2017) with 1 Am. Jur. 2d § 62 *Actions for penalties—Qui tam actions* (2017). In the second case, *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1994), the Sixth Circuit held that the executrix of the estate had standing to sue the debt collection agency under the Fair Debt Collection Practices Act ("FDCPA"). This case is distinguishable because unlike the CPA, which expressly limits private actions to any "person" aggrieved as a result of a CPA violation, the FDCPA's "liability section [§ 1692k] is couched in the broadest language possible" such that "any aggrieved party may bring an action under § 1692e." *Id.* at 649-50.

N.W.2d 55, 66 ¶ 41 (Wis. 2007) ("Thus, unless some statute can be found providing for survival, the action abates.") (internal citation omitted); *Lowe v. Experian*, 340 F. Supp. 2d 1170, 1176-77 (D. Kan. 2004) (holding that the decedent's Kansas Fair Credit Reporting Act claim did not survive her death due to the lack of a provision for the survivability of the claim and the inability for the claim to fall under the state's general survival statute).

Even if survival is not addressed in the statute itself, however, a statutory cause of action will survive the death of the claimant if survival is specified in another statute. 1 Am. Jur. 2d *Statutory causes of action, generally* § 59 (2017); *Keeney v. Infinity Ins. Co.,* 231 F. Supp. 2d 488, 492 (S.D.W.Va. 2002) (injured driver's West Virginia Unfair Trade Practices Act claim did not survive driver's unrelated death because his claim was not one that would have survived under common law nor was it listed as an action that survived under statute); *Johnson v. Household Finance Corp.,* 453 F.Supp. 1327, 1329 (S.D.Ill. 1978) (holding that the Truth in Lending Act action, a statutory cause of action, did not survive the death of the plaintiff because survival was not mandated by the TILA or another state statute). "A survivorship statute operates to preserve the decedent's claim for damages; the claim 'survives' the decedent and belongs to the estate." *Indalecio v. Yarofalir,* 2006 WL 2242754 ¶ 15 (N. Mar. I. 2006). The CNMI's general survival of actions statute, 7 CMC § 2601(a), only addresses tort claims. It provides:

> A cause of action based on tort shall not be lost or abated because of the death of the tortfeasor or other person liable. An action thereon may be brought or continued against the personal representative of the deceased person, but punitive or exemplary damages may not be awarded nor penalties adjudged in the action.

The CNMI's general survival of actions statute is very narrow compared to other jurisdictions whose definition of "persons" under their consumer protection act also explicitly excludes "estates" or their like.[5] *See* Haw. Rev. Stat. § 663-7 ("A cause of action arising out of a wrongful

---

[5] *See* Hawaii Unfair and Deceptive Trade Practices Act, Haw. Rev. Stat. § 480-1 ("'Person' or 'persons' includes individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability companies, and

act, neglect, or default . . . shall not be extinguished by reason of the death of the injured person. The cause of action shall survive[6] in favor of the legal representative of the person and any damages recovered shall form part of the estate of the deceased."); Cal Civ. Code § 377.21 ("A pending action or proceeding does not abate by the death of a party if the cause of action survives.").[7] Unlike these other jurisdictions in which their general survival of action statute may save a CPA claim, the CNMI's general survival statute does not.

Interpretation of the CNMI's general survival of actions statute was further narrowed by the Commonwealth Supreme Court in 2006.  In *Indalecio v. Yarofalir,* 2006 MP 18, the Commonwealth Supreme Court held that the CNMI Legislature's silence as to the survival of tort claims upon a victim's death "was not an oversight, but a calculated decision" to show that tort claims, including fraud claims, could not survive the death of the victim. *Id.* at ¶ 22. This Court recently acknowledged that the *Indalecio* rule can have harsh results when applied to these types of circumstances. *See Cecilia Flores v. Concepcion, et al.,* Case No. 15-cv-10 at 8, ECF No. 29 (D. N. Mar. I. April 25, 2016) (Order Denying Mot. for Substitution and Dismissing Case Without Prejudice) ("Allowing a thief to make off with money that rightfully should go to the victim's heirs, except for the unfortunate circumstance that the victim died during the pendency of the litigation, is a harsh and unfair result."). Nonetheless, the Commonwealth Supreme Court in *Indalecio* saved the claim by recharacterizing it as a wrongful death claim belonging to the estate. *Id.* This Court cannot save the CPA claim here.

---

incorporated or unincorporated associations"); California Consumers Legal Remedies Act, Cal. Civ. Code § 1761(c) ("'Person' means an individual, partnership, corporation, limited liability company, association, or other group, however organized").

[6] "Under HRS § 663-7 there survives in favor of the decedent's legal representative only such cause of action as the decedent himself had at the moment of his death." *Greene v. Texeira*, 505 P.2d 1169, 1172 (Haw. 1973) (*citing Rohlfing v. Akiona*, 369 P.2d 96, 98 (Haw. 1961)).

[7] "Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Civ. Code § 377.20.

In construing state law, district courts must follow the decisions of the state's highest court. *Harvey's Wagon Wheel, Inc. v. Van Blitter,* 959 F.2d 153, 154 (9th Cir. 1992) (citation omitted). "Only if there is no precedent or convincing evidence that the highest court of the state would decide differently would we need to predict state law." *Mangold v. California Public Utilities Comm'n,* 67 F.3d 1470, 1479 (9th Cir. 1995) (internal quotation marks and citation omitted). The lack of an express survival provision in the CNMI's CPA, the Commonwealth Supreme Court's strict construction of the CNMI's survival of claims statute in *Indalecio*, and the CNMI Legislature's unwillingness to broaden 7 CMC § 2601 since *Indalecio* leaves this Court with no basis to conclude that a deceased consumer's CPA claim has a right of survival. The opportunity to allow a CPA claim to survive the death of a consumer rightfully belongs to the Legislature. Accordingly, Union Bank's motion for summary judgment as to the CPA cause of action is granted. Because the Court must dismiss the CPA claim for Derron's lack of standing to pursue this private right of action on behalf of his father, the Court need not address Union Bank's motion for partial summary judgment on the issue of willful violation of the CPA as it is mooted.

### B.    Roll Over Interest Rate

Union Bank argues that its obligation to pay interest on Flores' TCD depends on the plain language of the TCD, which states that it "matures on OCT. 12, 1993 (32 days) and earns interest at the rate of 2.50%" and "earns no interest after maturity." (Def. Mot. for Partial Summ. J. re Violation of CPA and Int. Rate 7-8, ECF No. 80.) Flores alleges, however, that at the time he opened the TCD, he informed Lou that he was leaving Saipan for an indefinite period of time and asked whether Union Bank will roll over the TCD if he does not return to Saipan soon. (FAC ¶ 11.) Flores recalls that Lou "assured him that Union Bank will roll over the CD and will continue to earn interest at the then prevailing rate." (*Id.* ¶ 12.)

A TCD may qualify as an instrument in writing evidencing a transaction "between the parties, and hence must be considered in the light of the same rules of law and evidence as other written instruments." *See Verdi v. Helper State Bank,* 196 P. 225, 227 (Utah 1921); *Montgomery, Superintendent of Banks, et al. v.* Smith, 145 So. 822, 826 (Ala. 1933) ("A certificate of deposit is defined to be a written acknowledgement by a bank of the receipt of a sum of money on deposit which it promises to pay to the depositor, to his order, . . . whereby the relation of debtor and creditor between the bank and the depositor is created.") (internal citations omitted). Under CNMI law, "[w]here the language of a writing is plain and precise, a court can, as a matter of law, establish the intentions of the parties as declared in the writing." *Del Rosario v. Camacho,* 6 N.M.I. 213, 227 (2001) (citing *Santos v. Santos,* App. No. 98-029 (N.M.I. Sup. Ct. May 20, 2000) (Opinion at 7) (an unambiguous instrument conveying property must be construed to its terms)). "[L]anguage in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent." *Commonwealth Ports Auth. v. Tinian Shipping Co.*, 2007 MP 22 ¶ 17. To determine the parties' intent, the Court looks "only within the four corners of the agreement to see what is actually stated, and not at what was allegedly meant." *Id*. The parol evidence rule excludes evidence of prior or contemporaneous agreements or negotiations to change or modify the terms of a binding integrated agreement. *See Del Rosario v. Camacho,* 6 N.M.I. 213, 227 (2001) (citing Restatement (Second) of Contracts §§ 213, cmt. a, b, 215 (1981)); *Seol v. Saipan Honeymoon Corp.,* App. No. 96-011 (N.M.I. Sup. Ct. Apr. 12, 1999) (Opinion at 4)). In *Del Rosario*, the court stated that it "considers parol evidence, not to determine that a party meant something other than what he said, but only to show what he meant by what was said." *Del Rosario*, 6 N.M.I. at 227 (*citing Sablan v. Cabrera*, 4 N.M.I. 133, 140 n.40 (1994)).

Here, the face of Flores' TCD states:

. . . $200,000.00 has been deposited by Donald G. Flores. Payable to Donald G. Flores only upon maturity, presentation and surrender of this certificate, properly endorsed at the office of issue. This certificate *matures on OCT. 12, 1993 (32 days)* and *earns interest at the rate of 2.50%* with an annual percentage yield of 2.50% interest payable AT MATURITY. This certificate *earns no interest after maturity*, there is an early withdrawal fee if a withdrawal is made before maturity.

(Compl., Ex. A) (emphases added). The language of the TCD is plain and straightforward. The date and signature of the TCD indicates that Lou, an authorized Union Bank officer, approved the purchase of the TCD on September 10, 1993. The TCD in this case is therefore a binding integrated agreement because it: (1) lists all pertinent terms of the TCD, including the initial deposit, interest rate, date of maturity, and beneficiary; (2) identifies the parties to be bound by the agreement; and (3) indicates approval by an authorized Union Bank officer. It is clear that on September 10, 1993, both Flores and Union Bank mutually consented to be bound by the terms of the TCD.

Flores argues that the TCD is not a contract but rather evidence of the existence of a contract. (Opp'n to Mot. for Partial SJ ECF 80 at 2.) In particular, he states that the TCD is "nothing much more than a receipt of payment" with the real contract being the oral agreement between Flores and Lou. (Opp'n to Mot. for Partial SJ ECF 80 at 3.) Even if this Court were to accept Flores' proposition that the TCD is a receipt, a receipt "may contain a contract, and a contract embraced in a writing, which also acknowledges the receipt of money, stands upon the same footing as other written contracts and cannot be varied or modified by parol evidence." *The Delaware*, 81 U.S. 579, 601 (1871) (holding that insofar as a receipt is the evidence of contract between parties, "it stands on footing of all other contracts in writing and cannot be contradicted or varied by parol evidence"); *Morse v. Rice*, 54 N.W. 308, 309 (Neb. 1893) ("where a receipt also embodies a stipulation in the nature of a contract, it is not open to contradiction, but is conclusive upon the parties, in the absence of proof of fraud or mistake"); *but cf. Geler v.*

*National Westminster Bank USA*, 763 F.Supp. 722, 725 (S.D.N.Y. 1991) (holding the CD is not an integrated writing because depositor did not sign the CD or otherwise "unequivocally manifest[] his assent to its terms"). The TCD in this case goes beyond the mere acknowledgement of the receipt of money; it specifically identifies the parties to be bound, acknowledges approval by a Union Bank officer, and unambiguously lays out all pertinent terms of the TCD. To hold that Union Bank shall be bound by an oral agreement which modifies the terms so plainly and precisely laid out in the TCD which Flores possessed and which Union Bank approved, would be to ignore the parties' true intent. Consideration of Lou's prior or contemporaneous statement that the TCD will "roll over" and continue to earn interest at the prevailing rate (FAC ¶ 12) would add a condition not stated on the TCD, which clearly states that the TCD "earns no interest after maturity." Union Bank's obligation to pay interest on Flores's TCD rests solely on the plain language of the TCD. The terms of the TCD clearly prohibit interest after maturity on October 12, 1993. For these reasons, Union Bank's motion for partial summary judgment as to Plaintiff's claim for roll over interest rate is granted.

### C.    Request for Punitive Damages

Union Bank moved for an order granting partial summary judgment dismissing Flores' claims of fraud and bad faith and prayer for punitive damages. (Def Mot. for Partial SJ re Claims of Fraud, Bad Faith, Pun Damages, ECF No. 82.) This motion is based on the FAC, where Flores has stated that damages "may include as the case may be, actual, liquidated, and punitive." (FAC 19.) Flores clarifies in his opposition, however, that he only seeks punitive damages for his bad faith and fraud claims. (Opp'n to Mot for Partial SJ 13, ECF No. 88.) His response was therefore limited solely to bad faith and fraud. (*Id.*) The Ninth Circuit upheld this Court's decision that all of Flores' tort claims are time-barred, *Flores v. First Hawaiian Bank,* 642 Fed. Appx. at 698, and therefore no punitive damages are available for the claims of bad faith and fraud. Union Bank's

motion for partial summary judgment as to Flores' prayer for punitive damages under the fraud and bad faith claims is therefore granted.

## VI.    CONCLUSION

Based on the foregoing, Defendant Union Bank's motion for partial summary judgment as to Flores' claims of violation of the CPA (because it is not a "merchant" under the CPA) and roll over interest rate (ECF No. 80) is DENIED IN PART AND GRANTED IN PART; motion for partial summary judgment as to Flores' claims of punitive damages under the bad faith and fraud claims (ECF No. 82) is GRANTED; and motion for summary judgment as to Flores' CPA cause of action (because the Estate is not a "person" under the CPA) (ECF No. 122) is GRANTED.

IT IS SO ORDERED this 6th day of April, 2017.

RAMONA V. MANGLONA
Chief Judge